IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| BERRY SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09-02281-A/P |
| | ) | |
| WILLIAMS EQUIPMENT & SUPPLY COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

Before the court by order of reference is defendant Williams Equipment & Supply, Inc.'s ("WES") Second Motion to Dismiss. (D.E. 32). The court hereby submits the following proposed findings of fact and conclusions of law, and recommends that WES's Second Motion to Dismiss be granted as to the Title VII and Tennessee Human Rights Act claims.

**I. PROPOSED FINDINGS OF FACT**

Plaintiff Berry Sanders, through his counsel, filed his original complaint on May 5, 2009. The complaint alleged claims of employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 et seq. Sanders, who is Caucasian, claimed that:

Dan Forrest, Operations Safety Manager at Williams often

> made make discriminatory and demeaning remarks concerning Gay and Lesbian employees Freddie Skaggs, Assistant Dispatcher would refer to Mr. Sanders as "Gay Boy" in front of Mr. Forrest. On one occasion, Dan Forrest questioned as to why he had hired Berry Sanders. Mr. Forrest responded that he would not have hired "that kind" except Peggy Clayton wanted him hired. Female lesbian employees were referred to as "Uncle" and "carpetmunchers." On another occasion, when Clifford Jones an African-American employee and Berry Sanders were making a delivery together, Mr. Dan Forrest said over the Nextel radio that they Mr. Jones and Mr. Sanders were stuck together like dogs after which laughter in the office was heard over the radio. At certain times, Mr. Forrest would place grout bags over his head to look like a Ku Klux Klansman and say "O'kay Black guys you better run." Employees from MLGW witnessed this. Prior to being terminated, Mr. Sanders was in the office with Dan Forrest and Clifford Jones an African-American employee walked in. After Clifford Jones left the room, Mr. Dan Forrest stated "That Stupid Nigger really thinks I like Him." Mr. Sanders could no longer tolerate these kinds of statements and he (Mr. Sanders) reported these statements to Ms. Peggy Clayton, the vice President of Operations. Approximately sixty days after reporting this incident, Mr. Sanders was terminated from his employment with Williams purportedly for "lack of work," however, shortly thereafter, Williams and Specifically Mr. Dan Forrest hired another employee to do the work Mr. Sanders had been doing that purportedly no longer existed. During the time of his employment with Williams Mr. Sanders workload was intentionally increased and was excessive because of his presumed orientation.

(Compl. ¶ 16.) (errors in original).

On September 1, 2009, WES filed a First Motion to Dismiss Sanders's complaint pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that the complaint did not satisfy the pleading requirements of Fed. R. Civ. P. 8(a). Specifically, WES contended that Sanders's complaint did not identify the dates on which the alleged discriminatory acts occurred. WES asserted that, without

a reference to specific dates, the complaint failed to provide either WES or the court with a means of determining whether the complaint was filed within the statute of limitations period. WES argued that, as a result of the deficiencies in Sanders's complaint, the complaint failed to plead a plausible claim for relief.

On September 30, 2009, Sanders filed both a response in opposition to WES's Motion to Dismiss and a Second Motion to Amend his complaint.[1] In the response in opposition, Sanders stated that he began working for WES on August 3, 2004, and was terminated on November 11, 2006, as evidenced by the "Separation Notice" attached as an exhibit to Sanders's response.[2] The Separation Notice states that Sanders was terminated due to "lack of work." Sanders asserted that sometime in December of 2008 – over two years after he was terminated from WES - he spoke with Clifford Jones, a former WES employee. Jones informed Sanders during this conversation that after Sanders was terminated (which occurred on a Friday), WES hired someone else to replace him only three days later (on the following Monday). According to Sanders's response,

---

[1] Sanders had previously filed his First Motion to Amend the complaint on September 22, 2009, for the purpose of including a jury demand. The motion was unopposed and the court granted the motion. (D.E. 10, 12.)

[2] The Separation Notice actually indicates that Sanders was employed by WES through November 28, 2006, not November 11, 2006 as stated in his response. However, for purposes of deciding the Second Motion to Dismiss, this discrepancy is immaterial.

WES "concealed the discriminatory basis for the adverse employment action," and that based on this concealment the statute of limitations should be equitably tolled.  In his Second Motion to Amend his complaint, Sanders sought leave to amend his complaint so that he could specifically add these equitable tolling allegations to his complaint.

On January 26, 2010, following the submission of a reply by WES and a sur-reply by Sanders, the undersigned magistrate judge issued a report and recommendation, recommending that Sanders's Second Motion to Amend his complaint be granted and that, should the district judge adopt the recommendation, Sanders be allowed to file a second amended complaint to add the new allegations contained in his response in opposition and Second Motion to Amend. In addition, it was recommended that WES's First Motion to Dismiss be denied without prejudice and that WES be permitted to renew its motion after Sanders filed his second amended complaint.  Neither party filed objections to the report and recommendation, and the district judge subsequently adopted the report and recommendation on February 24, 2010.

However, before the district judge entered his February 24 order, Sanders inexplicably filed two complaints on February 18, 2010.  The first complaint was titled "Complaint" and was identical to the original complaint filed by Sanders in May of 2009.  The second complaint was also identical to the original complaint,

except that it was titled "Amended Complaint" and included a jury demand. Neither the complaint nor the amended complaint filed on February 18 included the date of Sanders's termination or the factual allegations relating to Sanders's equitable tolling claim.

On February 19, 2010, the Clerk of Court sent a "courtesy notice" to Sanders informing him that he had failed to include a certificate of service with either of the complaints filed on the previous day. On February 22, 2010, Sanders re-filed the February 18, 2010 amended complaint and added a certificate of service ("Second Amended Complaint"). Again, for reasons unknown, the Second Amended Complaint was identical to the prior complaints and did not include any new facts or allegations.

On March 4, 2010, WES filed a Second Motion to Dismiss Sanders's Second Amended Complaint, which is presently before the court. In the motion, WES argues that Sanders's Second Amended Complaint still fails to meet the pleading requirements of Fed. R. Civ. P. 8(a), in that it does not provide dates of the alleged wrongful employment practices, and therefore should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). On March 23, 2010, Sanders filed a response in opposition to WES's Motion to Dismiss his Second Amended Complaint. His March 23 response is identical to the September 30, 2009 memorandum that he filed in response to WES's First Motion to Dismiss.

In a May 21, 2010 reply to Sanders's response to the motion to

dismiss, WES argues that Sanders's Title VII and THRA claims are untimely. WES points out that Sanders's charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") on February 6, 2009, more than two years after he was terminated from WES. (D.E. 38-1 Ex. A.) WES therefore moves, in the alternative, for dismissal of Sanders's Title VII and THRA claims on the grounds that they are barred by the statute of limitations. In a sur-reply filed June 10, 2010, Sanders again asserts that equitable tolling and equitable estoppel principles apply in this case, as WES "concealed" the fact that he was being terminated in retaliation for his complaints of discriminatory conduct on the part of Dan Forrest.

## II. PROPOSED CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 12(b)(6) authorizes the court to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) tests the sufficiency of the claim for relief, "and as such, it must be understood in conjunction with Rule 8(a), which sets out the federal standard for pleading." Hutchison v. Metro. Gov't of Nashville and Davidson, County, 685 F. Supp. 2d 747, 748-49 (M.D. Tenn. 2010) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 2004)). The Federal Rules reflect a policy of liberal notice pleading, and in furtherance of this policy, Rule 8(a)(2) states that a complaint

need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed, specific factual allegations are not necessary at the pleading stage, as the complaint exists to serve the limited purpose of providing the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).

The Supreme Court has recently clarified the standard for testing the sufficiency of a complaint under Rule 12(b)(6). "A complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citations omitted). The complaint need not reach the level of probability but must provide "more than a sheer possibility that a defendant has acted unlawfully." Id.; see also Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629-30 (6th Cir. 2009) (stating that granting a motion to dismiss is appropriate where a claim "while not utterly impossible, [is] 'implausible'").

As a general rule, a plaintiff is not required to plead facts placing a claim within the limitations period "because the statute of limitations is an affirmative defense for which the defendant bears the burden of proof." United States v. Carell, 681 F. Supp. 2d 874, 888 (M.D. Tenn. 2009) (citation omitted). Only after the defendant has met its burden of proving that the statute of

limitations has run will the burden shift to the plaintiff to establish an exception to the statute of limitations. Campbell v. Grand Trunk W. R.R. Co., 238 F.3d 772, 775 (6th Cir. 2001). "Consequently, the statute of limitations issue in most cases cannot be decided on a motion to dismiss or from the face of a plaintiff's complaint." Carell, 681 F. Supp. 2d at 888. "The Sixth Circuit has held, however, that a plaintiff may have an obligation to plead facts in avoidance of the statute of limitations defense if 'it is apparent from the face of the complaint that the time limit for bringing the claim[s] has passed.'" Id. (quoting Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 520 (6th Cir. 2008) and Hoover v. Langston Equip. Assocs., Inc., 958 F.2d 742, 744 (6th Cir. 1992)); see also 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1308 (3d ed. 2010) ("[T]he defense of the statute [of limitations] may be raised on a motion to dismiss under Rule 12(b)(6) when it is apparent from the face of the complaint that the time period for bringing the claim for relief has passed").

Sanders's Second Amended Complaint, on its face, does not allege exactly when the discriminatory acts occurred or when he filed his charge of discrimination. However, "'[i]n determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case,

-8-

and exhibits attached to the complaint also may be taken into account.'" Maturen v. Lowes Home Ctrs., Inc., No. 06-CV-15126, 2007 WL 3173962, at *4 (E.D. Mich. Oct. 26, 2007) (quoting Nieman v. NLO, Inc., 108 F.3d 1546, 1554 (6th Cir. 1997)). The Sixth Circuit has further explained that "'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" Id. (quoting Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997) and Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993)). "Thus, the documents that are central to the complaint and are attached to the instant motions, e.g., the EEOC decision, may be referred to without converting the motions to summary judgment motions." Id.

In the present case, Sanders states in his response in opposition to WES's motion to dismiss that he began working for WES on August 3, 2004, and was terminated on November 11, 2006. According to Sanders's charge of discrimination attached to WES's reply, he filed his discrimination charge with the EEOC on February 6, 2009, more than two years after he was terminated from WES. (D.E. 38-1 Ex. A.) On February 11, the EEOC issued a Dismissal and Notice of Rights. (D.E. 38-2 Ex. B.) These documents clearly demonstrate that Sanders filed his discrimination charge long after the statute of limitations had run, and therefore his Title VII and THRA claims are time-barred. See Amini v. Oberlin College, 259

F.3d 493, 498 (6th Cir. 2001) (describing the "dual statute of limitations" under Title VII, pursuant to which an EEOC charge must be filed within 300 days of the discriminatory act in "deferral states"); see also Tartt v. City of Clarksville, 149 F. App'x 456, 460 (6th Cir. 2005) (Tennessee is a "deferral state," meaning that the 300-day statute of limitations applies); Johnson v. East Tennessee State Univ., No. 99-6418, 2000 WL 1182792, at *1 (6th Cir. Aug. 16, 2000) (same); Trimble v. IQ Group, No. 1:10-cv-26, 2010 WL 3851398, at *3 (E.D. Tenn. Sept. 27, 2010) (explaining that the THRA provides relief via the right to file either an administrative complaint with the Tennessee Human Rights Commission within 180 days of the alleged discriminatory practice or a direct suit within a year of the alleged discriminatory practice). In fact, Sanders concedes that his charge of discrimination was not timely filed. He instead argues that the court should allow his claims to proceed under principles of equitable tolling and equitable estoppel.

The Supreme Court has held that the 300-day period of limitations for filing a charge with the EEOC "is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). "The doctrine of equitable tolling allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's

control.'" Robertson v. Simpson, 624 F.3d 781, 783 (6th Cir. 2010) (quoting Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 560-61 (6th Cir. 2000)). The doctrine of equitable tolling "is used sparingly by federal courts" and "[t]he party seeking equitable tolling bears the burden of proving he is entitled to it." Robertson, 624 F.3d at 784.

The Sixth Circuit has adopted a test for analyzing equitable tolling claims. The factors to be considered are "'(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.'" Keenan v. Bagley, 400 F.3d 417, 421 (6th Cir. 2005) (quoting Andrews v. Orr, 851 F.2d 146, 151 (6th Cir. 1988)). "[T]hese factors 'are not necessarily comprehensive or always relevant; ultimately every court must consider an equitable tolling claim on a case-by-case basis.'" Id. (quoting King v. Bell, 378 F.3d 550, 553 (6th Cir. 2004)).

The court finds that equitable tolling is not warranted in this case. Although Sanders argues that equitable tolling should apply, he has not alleged in any of the many versions of his complaint, or in his response or sur-reply, facts that would demonstrate he lacked actual or constructive notice of the filing requirement, his diligence in pursuing his rights, the absence of

prejudice to WES, and his reasonableness in remaining ignorant of the notice requirement. Although Sanders claims that WES concealed the discriminatory reason for his termination by informing him that he was being terminated due to the lack of available work, Sanders does not allege that he attempted to investigate the "true" reason for his termination, that he followed up with WES to determine whether the available work increased to justify his return to his former position (in which case he could have discovered that his position had been filled), or that WES interfered with his efforts to investigate. Where a plaintiff fails to allege facts sufficient to demonstrate that equitable tolling relief is warranted, a court may dismiss an untimely claim pursuant to Fed. R. Civ. P. 12(b)(6). Amini, 259 F.3d at 501 (affirming district court's dismissal of untimely discrimination claims under Rule 12(b)(6) because "[b]ased on the facts alleged in the complaint, we simply cannot state that Amini acted with the requisite diligence in his attempts to ascertain the information which ultimately led him to file a discrimination charge."); A've v. Mich. Dept. of Corrections, 12 F. App'x 293, 295 (6th Cir. 2001) (affirming district court's dismissal of untimely discrimination claim under Rule 12(b)(6) because "A've has not alleged any facts that would justify equitable tolling, and none is apparent from the record").

In Amini, the court considered a case in which Saeid Amini, a forty-five year old Iranian born Muslim male who applied for a

-12-

tenure-track mathematics position at Oberlin College in early October 1998, brought a claim against Oberlin under Title VII, the Age Discrimination in Employment Act ("ADEA"), and 42 U.S.C. § 1981. Approximately three months after he applied for the position, Amini received a letter from Oberlin stating that the position had been filled. Id. at 496. Following receipt of the letter, Amini made several attempts to learn whom Oberlin had hired. These attempts consisted of regularly checking Oberlin's website to see if information on the new faculty member had been posted, as well as a personal visit to the campus and Oberlin's mathematics department. Id. On September 16, 1999, Sanders again visited Oberlin's website and discovered that Dr. Chris Andrews, an Oberlin graduate and white male under the age of forty, had been hired for the position. On December 9, 1999, Amini filed an EEOC charge, and on January 31, 2000, Amini filed his Title VII, ADEA, and § 1981 claims against Oberlin. Subsequently, Oberlin filed a Rule 12(b)(6) motion to dismiss Amini's claims, arguing that both Amini's Title VII and ADEA claims should be dismissed because his discrimination charge was filed beyond the 300-day time period. Id. at 497. The district court granted Oberlin's motion, and the Court of Appeals affirmed.[3] Regarding Amini's equitable tolling argument, the court found that Amini's actions of regularly

---

[3]The court reversed and remanded in part the district court's order on other grounds.

visiting Oberlin's website and physically visiting the campus to determine who filled the position he applied for did not demonstrate adequate diligence. In the present case, Sanders has not alleged any diligence on his part, and certainly far less than the diligence that the court in <u>Amini</u> found to be inadequate. Moreover, "[a]lthough it is unclear how the grant of equitable tolling relief to [plaintiff] would be prejudicial to [defendant], the Supreme Court has held that this factor alone is not a sufficient basis for allowing equitable tolling relief to the plaintiff." <u>Id.</u> at 501.

Finally, Sanders alleges that the doctrine of equitable estoppel should be applied in this case because WES concealed the real reason for his termination. Equitable estoppel precludes a party to a lawsuit from raising a certain defense, regardless of the merits of the defense, because of some improper conduct on that party's part. <u>State Bank of Coloma v. Nat'l Flood Ins. Program</u>, 851 F.2d 817, 819 (6th Cir. 1988). Although styled by Sanders as equitable estoppel, in essence he asks the court to toll the statute of limitations based on WES's fraudulent concealment of the real reason for his termination. "[T]he fraudulent concealment doctrine triggers three questions: (1) Did [defendant] actively conceal its wrongful conduct from [plaintiff]? (2) Did that concealment prevent [plaintiff] from discovering [defendant's] wrongdoing during the limitations period? and (3) Did [plaintiff]

'exercise[] diligence in trying' to uncover [defendant's] conduct?" Ruth v. Unifund CCR Partners, 604 F.3d 908, 910 (6th Cir. 2010) (quoting Egerer v. Woodland Realty, Inc., 556 F.3d 415, 422 (6th Cir. 2009)); see also Bauer v. Carty & Co., No. 04-2428, 2005 WL 948641, at *4 (W.D. Tenn. Mar. 9, 2005) ("To satisfy the standard of equitable tolling in the fraudulent concealment context, a plaintiff must establish that: '(1) the defendant took affirmative steps to conceal the plaintiff's cause of action; and (2) the plaintiff could not have discovered the cause of action despite exercising due diligence.'") (quoting Matthews v. New Century Mortgage Corp., 185 F. Supp. 2d 874, 883 (S.D. Ohio 2002) and Jarrett v. Kassel, 972 F.2d 1415, 1423 (6th Cir. 1992)). As discussed above, Sanders has not alleged that he exercised any diligence (much less due diligence) in attempting to discover the alleged discriminatory reason for his termination. Thus, equitable tolling or "estoppel" based on fraudulent concealment is not warranted.

### III. RECOMMENDATION

For the reasons above, the court recommends that WES's Second Motion to Dismiss be granted as to the Title VII and THRA claims.[4]

Respectfully submitted,

---

[4] WES does not seek dismissal of Sanders's § 1981 claim on statute of limitations grounds, as it appears that this claim is not time-barred. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383-85 (2009) (holding that a four-year statute of limitations applies to § 1981 claims).

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

December 29, 2010
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(c). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**