**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

_____

| | | |
|---|---|---|
| **BERRY SANDERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 09-2281-STA** |
| | ) | |
| **WILLIAMS EQUIPMENT & SUPPLY** | ) | |
| **COMPANY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

Before the Court is Defendant Williams Equipment & Supply Company, Inc.'s Motion for Summary Judgment (D.E. # 94) filed on December 15, 2011. Plaintiff Berry Sanders has filed a response in opposition (D.E. # 101), and Defendant has filed a reply brief (D.E. # 108). For the reasons set forth below, Defendant's Motion is **GRANTED**.

### BACKGROUND

The following facts are not in dispute for purposes of this Motion unless otherwise noted. Plaintiff alleges that Defendant dismissed him from his job in retaliation for Plaintiff complaining about discriminatory comments of a racial and sexual nature made in the workplace. According to the Statement of Undisputed Facts, Defendant distributes and offers a broad range of equipment, supplies, and rental products in the construction industry. (Clayton Decl. ¶ 4.) On July 27, 2004, Plaintiff applied for employment as a delivery driver in Defendant's Memphis location. (Sanders Dep. 32:13–20, Sept. 20, 2011.) Plaintiff, who is caucasian, was hired as a delivery driver by Dan

1

Forrest ("Forrest") and began work on August 3, 2004. (Forrest Decl. ¶ 7.) Plaintiff's duties included driving a pick-up truck to deliver concrete, supplies, and other materials to job sites. (Sanders Dep. 35:23– 36:17-38.) Plaintiff typically worked Monday through Friday, 7:00 a.m. to 4:30 p.m. (*Id.* at 37:22–38:4.) Plaintiff reported to Forrest and received his daily assignments for deliveries from Forrest in the mornings. (*Id.* at 39:2–21.) Once Plaintiff had his assignments, he would go to Defendant's warehouse to load his truck and make the deliveries before returning for additional assignments. (*Id.*) In the course of performing his daily duties, Plaintiff did not have constant contact with Forrest. (*Id.*)

According to Plaintiff, Forrest would tell inappropriate jokes of a racial nature in the workplace. (*Id.* at 40:18–25.) Plaintiff testified that Forrest would almost never make these jokes in the presence of African-American employees. (*Id.* at 110:9–111:2.) Plaintiff did once witness Forrest put two bags over his head and say to African-American employees, "All right, you black guys. It's time to go to work. I mean business." (*Id.* at 111:4–7.) Plaintiff never told Forrest that he found Forrest's conduct to be offensive. (*Id.* at 111:19–112:5.)

Finally, in April 2006, Plaintiff contacted Peggy Clayton ("Clayton"), the vice-president of the company, and complained about Forrest's comments. (*Id.* at 85:6–86:4.) According to Plaintiff, he specifically reported that Forrest had remarked about another African-American driver, "the stupid n----- thinks I like him." (*Id.* at 67:2–6.) Plaintiff also reported comments Forrest had made about the perceived sexual orientation of other employees. (*Id.* at 67:7–18.) According to Plaintiff, Clayton responded that such comments would not be tolerated. (*Id.* at 67:23–68:1.) From that time on, Plaintiff noticed that Forrest stopped making inappropriate jokes and comments. (*Id.* at 68:2–4.) Clayton denies that Plaintiff ever made a complaint to her about Forrest's racial jokes and remarks

2

or that she ever discussed such conduct with Forrest. (Clayton Decl. ¶ 11; Forrest Decl. ¶ 12.) For his part Forrest was not aware of any complaints of discrimination Plaintiff made against him. (Forrest Decl. ¶ 13.) Plaintiff admits that he has no knowledge of any conversations between Clayton and Forrest about Plaintiff's complaint or whether Clayton even told Forrest that the complaint was brought by Plaintiff. (Sanders Dep. 63:4–13; 118:16–25.)

After Plaintiff made the complaint to Clayton, he noticed that Forrest began to give him four or five additional deliveries to make per day. (*Id.* at 68:5–10; 78:3–19.) Plaintiff believed that Forrest assigned him the extra work because Plaintiff had complained to Clayton about Forrest's racial jokes and comments. (*Id.* at 79:9–15.) According to Forrest, Defendant's business generally increased in the summer months and every driver's workload depended on customer needs. (Forrest Decl. ¶ 25.) For example, a driver delivering large equipment would make one delivery and then return to the office for the next assignment; whereas, a driver making smaller deliveries would make multiple deliveries before returning to the office. (*Id.*) Plaintiff testified that he confirmed he was making more deliveries when Bill Gibson filled in for Forrest and Gibson noted that Plaintiff was making more deliveries. (Sanders Dep. 73:13–75:5.) Forrest states that the nature of the product being delivered is a better indicator of how evenly deliveries were assigned among the drivers. (Forrest Decl. ¶ 16.)

On an unspecified day in late October 2006, Plaintiff observed Forrest putting Christmas decorations up in his office, as was his custom. (Sanders Dep. 55:14–18.) When Plaintiff mentioned the decorations to Forrest, Forrest replied that he intended to have a good Christmas "because somebody reported me, that I can't do my job, and I've been here 25 years." (*Id.* at 55:19–23.) Forrest added that he was "going to get rid of them before Christmas so they don't have a good

3

Christmas because they won't have a job." (*Id.* at 55:24–56:2.)  According to Plaintiff, Forrest mentioned that someone had called Clayton but did not indicate who that was.  (*Id.* at 56:3–7.) Plaintiff testified that Forrest referred to a complaint that Forrest did not know how to do his job and did not mention a complaint about discrimination or harassment.  (*Id.* at 66:5–12.)

Prior to this exchange in October 2006, Forrest had met with the delivery crew in August 2006 and discussed slow productivity and the need for improvement if the drivers were to remain employed with Defendant.  (Forrest Decl. ¶ 17.) On October 23 and 24, 2006, Forrest dismissed two delivery drivers, Gary Singleton and Wayne Stanford for not meeting expectations.  (*Id.* ¶ 19.) Neither of these employees had ever made a complaint against Forrest.  (Clayton Decl. ¶ 12.)  Then in November 2006, Forrest was directed by upper management to lay off additional employees.  (*Id.* ¶ 13.; Forrest Decl. ¶ 20.)  Forrest made his decision about which employees to let go based on the following factors: performance, attitude, and following instructions.  (Forrest Decl. ¶ 21.)  One of the employees Forrest selected for lay off was Plaintiff.  On November 28, 2006, Forrest informed Plaintiff that he was laid off for lack of work.  (*Id.* ¶ 22.)  Forrest decided to lay off Plaintiff because of the slowdown in work, his difficulty in getting along with other employees, and his attitude towards authority.  (*Id.* ¶ 23.)  Clayton did not participate in the decision to lay off Plaintiff.  (*Id.*; Clayton Decl. ¶ 14.)  Plaintiff believes he was laid off because of the complaint he made to Clayton about Forrest's remarks concerning race and sexual orientation.  Additionally, Plaintiff believes that Forrest discriminated against him because of his sexual orientation.  (Sanders Dep. 93:2–16.)

After a lay-off, Defendant might recall laid-off workers when business picked back up. (Forrest Decl. ¶ 25.)  When work increased in March and April 2007, Forrest did not recall Plaintiff. (*Id.* ¶ 26.)  On March 5, 2007, Defendant hired Terric Johnson as a delivery driver performing

4

substantially the same job duties Plaintiff had had.  (*Id.* ¶ 27.)

The Court would also note that the parties were granted an extension of the discovery period after Defendant filed its Motion for Summary Judgment.  Prior to summary judgment, Defendant had filed a number of motions to compel Plaintiff to provide responses to written discovery.[1]  The United States Magistrate Judge ruled on these motions and ordered the parties to file a status report by December 20, 2011, setting out any remaining discovery issues for the Court to address.[2]  When the parties filed their status report, the Magistrate Judge found that the parties had agreed to certain deadlines for production of the remaining discovery and granted the parties until March 1, 2012, in which to complete all discovery.[3]  The Court ultimately granted the parties additional time to complete discovery through April 20, 2012.[4]  At the conclusion of the discovery period, neither party filed any additional evidence with the Court.

On May 9, 2012, the Court ordered each party to notify the Court whether any additional information obtained during the late discovery period was material to the issues presented in the Motion for Summary Judgment.  Each party was given until Friday, May 18, 2012, in which to file a motion for leave to submit new evidence or to file a notice that it did not intend to submit new evidence.  Defendant filed a notice indicating that it did not intend to submit any new evidence in

---

[1] Def.'s Mot. to Compel, June 8, 2011 (D.E. # 47); Def.'s Mot. to Dismiss or Mot. to Compel Compliance, July 27, 2011 (D.E. # 60); Def.'s Second Mot. to Dismiss or Mot. to Compel Pl. to Comply, Nov. 15, 2011 (D.E. # 89).

[2] Order Denying Def.'s Second Mot. to Dismiss, Dec. 1, 2011 (D.E. # 93).

[3] Order, Jan. 5, 2012 (D.E. # 96).

[4] Order Granting Def.'s Am. Mot. for Add'l Time to Complete Discovery, Apr. 3, 2012 (D.E. # 109).

support of its Motion (D.E. # 112).  Plaintiff failed to file anything with the Court.  Therefore, Defendant's Motion is ripe for disposition.

In its Motion for Summary Judgment, Defendant seeks dismissal of Plaintiff's remaining claims under § 1981.  Defendant argues that § 1981 applies only to claims for race discrimination and retaliation.  To the extent that Plaintiff has alleged a § 1981 claim for discrimination on the basis of sexual orientation, that claim fails.  Defendant next contends that Plaintiff cannot make out a *prima facie* claim for reverse race discrimination.  Even if he could, Defendant has proffered a legitimate, non-discriminatory reason for laying off Plaintiff.  Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's claim for retaliation.  According to Defendant, Plaintiff cannot show that he engaged in protected activity and cannot establish a causal connection between such activity and his lay off.  Therefore, Defendant's Motion for Summary Judgment should be granted.

In his response in opposition, Plaintiff claims that questions of material fact exist in this case which preclude summary judgment.  Plaintiff disputes Clayton's declaration that Plaintiff never made a complaint against Forrest about racial and sexual comments in the workplace.  Likewise, Plaintiff disputes Forrest's denial that Clayton ever discussed complaints about his making racial or sexual comments in the workplace.  The Court would note that Plaintiff's four-page response brief cites relevant case law on the summary judgment standard but fails to discuss § 1981 or what legal basis exists for Plaintiff's claims.  While Plaintiff discusses disputed facts that are relevant to his claim for retaliation, Plaintiff has not addressed Defendant's arguments about Plaintiff's possible claims for discrimination on the basis of sexual orientation or race.

Defendant has filed a reply in which Defendant addresses some of the facts Plaintiff has tried

6

to dispute in his response to the statement of undisputed facts.  Defendant has also reiterated some of the legal arguments made in support of its Motion for Summary Judgment.

<u>**STANDARD OF REVIEW**</u>

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving part "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[5]  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[6]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[7]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[8]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[9]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[10]

---

[5] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[6] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[7] *Celotex*, 477 U.S. at 324.

[8] *Matsushita*, 475 U.S. at 586.

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[10] *Id*. at 251-52.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[11]   In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[12]   Finally, the "judge may not make credibility determinations or weigh the evidence."[13]

## ANALYSIS

### I. Plaintiff's Unsupported Claims

As an initial matter, Plaintiff alleges in his Complaint that Forrest assigned him additional work because of his "presumed orientation."[14]   The pleadings also state that Plaintiff's dismissal was "based on race and gender-based discrimination."[15]   In its Motion, Defendant argues that Plaintiff cannot prove a § 1981 claim for discrimination on the basis of sexual orientation or race. Defendant's memorandum briefs the relevant legal standard for claims under § 1981 and seeks judgment as a matter of law as to Plaintiff's claims based on sexual orientation and reverse race discrimination.[16]   Plaintiff has failed to respond to Defendant's arguments on these issues. In his

---

[11] *Celotex*, 477 U.S. at 322.

[12] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[13] *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569 (6th Cir. 2012); *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[14] Compl. ¶ 16.

[15] *Id.* ¶ 17.

[16] It is not clear to the Court how Plaintiff's race claim is cognizable whether as a claim for reverse discrimination or otherwise.

8

response in opposition to Defendant's Motion for Summary Judgment, Plaintiff only refers to disputes of fact that are relevant to his retaliation claim.  Even at that Plaintiff does not brief the law on § 1981 retaliation claims or apply the law to the facts of his case.  Nowhere does the brief address Defendant's arguments about sexual orientation and race discrimination.  District courts in this Circuit routinely grant summary judgment as to claims a plaintiff fails to support or address in a response to a motion for summary judgment.[17]  Under the circumstances the Court finds that Plaintiff has abandoned these unsupported claims.  Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claims based on sexual orientation and race.

**II. Retaliation**

Plaintiff's only remaining claim is his theory that Defendant retaliated against him in violation of § 1981.  Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[18]  The same principles that courts use to evaluate civil rights claims under other federal anti-discrimination laws apply in § 1981

---

[17] *Burress v. City of Franklin, Tenn.*, 809 F. Supp. 2d 795, 809 (M.D. Tenn. 2011); *Anglers of the Au Sable v. U.S. Forest Serv.*, 565 F. Supp. 2d 812, 839 (E.D. Mich.2008)*; Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S.D. Ohio 2005); *Kattar v. Three Rivers Area Hosp. Auth.*, 52 F. Supp. 2d 789, 798 n.7 (W.D. Mich. 1999).  *See also Clark v. City of Dublin,* No. 05-3186, 2006 WL 1133577, at *3 (6th Cir. Apr. 27, 2006) (where the appellant did not properly respond to the arguments asserted against his ADEA and ADA claims by the appellees in their motion for summary judgment, the appellant had abandoned his ADEA and ADA claims); *Conner v. Hardee's Food Sys.,* No. 01-5679, 2003 WL 932432, at *4 (6th Cir. Mar. 6, 2003) (finding that, "Because Plaintiffs failed to brief the issue before the district court . . . Plaintiffs abandoned their . . . claim."); *Hazelwood v. Tenn. Dept. of Safety*, No. 3:05-cv-356, 2008 WL 3200720, at *8 (E.D. Tenn. Aug. 5, 2008).

[18] *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006) (other citations omitted).

cases.[19]  In order to establish a *prima facie* case of retaliation, a § 1981 plaintiff must show that (1) he engaged in protected activity, (2) the activity was known to the defendant, (3) plaintiff was subjected to a materially adverse action, and (4) there was a causal connection between the protected activity and the adverse action.[20]  Once the plaintiff meets this burden, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its action, at which point the burden shifts back to plaintiff to show that the proffered reason was not its true reason but merely a pretext for retaliation.[21]  In the case at bar, the parties do not dispute that viewing the evidence in the light most favorable to the non-moving party, Plaintiff engaged in protected activity and suffered an adverse action when he was laid off.[22]  The only issues presented are whether Defendant had knowledge of Plaintiff's protected activity and whether there was a causal connection between Plaintiff's protected activity and his lay-off.

**A. Knowledge of the Protected Activity**

The Court holds that Plaintiff has failed to make out his prima facie case for retaliation. First, the Court concludes that Plaintiff has not shown that Forrest, the supervisor who made the

---

[19] *Id.* (citing *Patterson v. McLean Credit Union,* 491 U.S. 164, 186 (1989), *overruled on other grounds by* Pub.L. 102-166, § 101 (noting that "this scheme of proof, structured as a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination . . . should apply to claims of racial discrimination under § 1981") (other citations omitted)).

[20] *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476, 485–87 (6th Cir. 2010) (citation omitted).

[21] *Id.* (citation omitted).

[22] Notably, Clayton denies that Plaintiff ever reported Forrest's racist comments to her. Nevertheless, for purposes of this Motion, Defendant has assumed for the sake of argument that Plaintiff did make such a report to Clayton.  Def.'s Mem. in Support 14 (D.E. # 94-9).

decision to lay Plaintiff off, knew that Plaintiff had previously complained about Forrest's inappropriate remarks.  Whether the employer's knowledge of the protected activity is viewed as an independent element of the prima facie case or simply as one aspect of proving a causal connection,[23] the Sixth Circuit has repeatedly held that summary judgment is proper where a plaintiff fails to establish that the decision-maker had knowledge of the protected activity.[24]  Based on the record before the Court, Plaintiff has failed to adduce evidence from which a reasonable juror could find that Forrest knew of Plaintiff's protected activity.   The evidence, when viewed in a light most favorable to Plaintiff, shows only that in April 2006 Plaintiff made complaints to Clayton about Forrest's workplace conduct.  It is undisputed hat Plaintiff has no direct evidence that Clayton ever told Forrest about the complaints.  Both Clayton and Forrest deny that they ever discussed Plaintiff making a report to Clayton.  Plaintiff simply speculates that Clayton must have informed Forrest of the complaint.  Where the decision-maker denies having knowledge of the alleged protected activity, a plaintiff's mere speculation that the decision-maker must have known is not enough.[25]

---

[23] *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 481–82 (6th Cir. 2008) (collecting cases taking both approaches).

[24] *E.g. Hopkins v. Canton City Bd. of Educ.*, No. 10-3876, 2012 WL 1415380, at *11 (6th Cir. Apr. 24, 2012); *Kyle-Eiland v. Neff*, 408 F. App'x 933, 941 (6th Cir. 2011); *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1027 (6th Cir. 2010); *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 996 (6th Cir. 2009); *Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 570–71 (6th Cir. 2009); *Mulhall v. Ashcroft,* 287 F.3d 543, 551 (6th Cir. 2002).

[25] *Brown v. City of Franklin*, 430 F. App'x 382, 386 (6th Cir. 2011) ("Brown contests this simply by contending that human resources 'must have told' Garzarek of Brown's statements. This, however, is pure speculation, and Brown conceded that he has no evidence to undermine Garzarek's claim of ignorance."); *Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 148 (6th Cir. 2007) ("To survive a summary judgment motion, a plaintiff must put forward more than speculations or intuitions."); *Proffitt v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 150 F. App'x 439, 442–43 (6th Cir. 2005) (quoting *Muhall*, 287 F.3d at 552) ("Where the decision-maker denies having knowledge of the alleged protected activity, the plaintiff must do more than

Plaintiff has also failed to carry his burden on this point through circumstantial evidence. In the absence of direct evidence, a plaintiff may prove by means of circumstantial evidence that a decision-maker had knowledge of the protected activity.[26] Here Plaintiff points to evidence that soon after he made his complaint, Forrest stopped making the inappropriate comments in Plaintiff's presence and seemed to assign Plaintiff additional deliveries. Plaintiff assumed that Forrest did so in retaliation for Plaintiff making a complaint against him.[27] However, Plaintiff has no other proof to support his speculation on this point. Plaintiff has not specified when the apparent increase in his workload began or for how long it continued. Plaintiff has also not refuted Defendant's evidence that delivery drivers had more assignments during the summer months and their workload was entirely dependent on the type of equipment they delivered. As such, the Court holds that evidence of Forrest assigning Plaintiff more deliveries does not go to show that Forrest knew about Plaintiff's complaint. Plaintiff also relies on evidence that some time in October 2006, Forrest told Plaintiff that "somebody reported me, that I can't do my job" and that he was "going to get rid of them before Christmas so they don't have a good Christmas because they won't have a job." The Court finds that

---

offer only conspiratorial theories or flights of fancy, speculations, hunches, intuitions, or rumors.") (internal quotations and ellipsis omitted)).

[26] *Proffitt*, 150 F. App'x at 442-43 (stating that direct evidence of knowledge not required, and a plaintiff "may survive summary judgment by producing circumstantial evidence to establish this element of her claim"); *Allen v. Mich. Dep't of Corr.,* 165 F.3d 405, 413 (6th Cir. 1999) (finding a sufficient circumstantial case for knowledge of plaintiff's protected activity where plaintiff was the only one of several similarly-situated black officers to receive remedial action); *Polk v. Yellow Freight Sys., Inc.*, 876 F.2d 527, 531 (6th Cir. 1989) (finding a sufficient circumstantial case for knowledge of protected activity where defendant told plaintiff, "I know where you've been,"after plaintiff returned from the state civil rights department).

[27] Sanders Dep. 77:20–78:19 ("I was like, 'Yeah, he's keeping me busy and I'm doing more runs than other people,' but at this point I knew I was being discriminated against. But as long as I didn't have to sit there and sit around him it was a relief.").

this evidence also does not support an inference that Forrest knew about Plaintiff's complaint six months earlier. Not only did Forrest allegedly make this statement many months after the complaint, nothing about the statement indicates that Forrest was referring to a complaint about racist conduct in the workplace. According to Plaintiff, Forrest referred to a report about his inability to perform his job duties. In the absence of direct or circumstantial proof that Forrest knew about Plaintiff's complaint, the Court concludes that Plaintiff has failed to carry his burden as to that element. On this basis alone, Defendant would be entitled to judgment as a matter of law.

**B. Causal Connection**

Second, even if Plaintiff had adduced evidence to create an inference about Forrest's knowledge of his protected activity, Plaintiff has not established a causal connection between his protected activity in April 2006 and his lay-off in November 2006. "To establish a causal connection, Plaintiff must proffer evidence sufficient to raise the inference that his protected activity was the likely reason for the adverse action."[28] Plaintiff may make this showing in a variety of ways, including with evidence that "the employer treated the plaintiff differently from similarly situated individuals and whether there is a temporal connection between the protected activity and the retaliatory actions."[29] For example, proof that the employer heightened its scrutiny of the employee after the protected activity occurred would show that the employer treated the employee differently.[30] The Court holds that under the totality of the circumstances, Plaintiff has adduced no such evidence

---

[28] *Spengler v. Worthington Cyclinders*, 615 F.3d 481, 493 (6th Cir. 2010) (citations and internal quotation marks omitted).

[29] *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516–17 (6th Cir. 2009).

[30] *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 436 (6th Cir. 2009).

13

in this case.

According to Plaintiff, he made his complaint about Forrest in April 2006 and was laid off from his job in November 2006, a span of approximately seven months. The Court holds that standing alone, the length of time between Plaintiff's protected activity and the lay off does not suggest a causal connection between the two events.[31]  Moreover, Plaintiff has not shown that Forrest subjected him to any other retaliatory conduct. For instance, Plaintiff has not proven that Forrest heightened his scrutiny of Plaintiff after his protected activity for the purpose of justifying the subsequent lay off. An employee may establish causation by showing that his employer increased its scrutiny of the employee for the purpose of finding a legal basis to discipline him.[32]  The only evidence of disparate treatment in the relevant period is Plaintiff's belief that he was assigned more deliveries. As previously discussed, Plaintiff has not challenged Forrest's explanation for the possible disparity in delivery assignments.  As such, Plaintiff has only his subjective belief that Forrest was targeting him. Even accepting as true Plaintiff's contention that he was perhaps singled out for more work, Plaintiff has not shown how the increase in his work was analogous to increased scrutiny designed to build a case for a subsequent adverse employment action. For example, there is no evidence that Plaintiff was given additional work assignments and then laid off for failing to

---

[31] *See also Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010) (holding that span of eight months suggested that dismissal was "coincidence"); *Parnell v. West*, No. 95-2131, 1997 WL 271751, at *3 (6th Cir. May 21, 1997) (holding that span of seven months "does not necessarily support a causal link").

[32] *Cf. Hamilton*, 556 F.3d at 432 (finding that evidence of increased scrutiny that resulted in more discipline and ultimately in termination was probative of a causal connection); *Jones v. Potter,* 488 F.3d 397, 408 (6th Cir. 2007) (noting that an employer cannot conceal an unlawful discharge by closely observing an employee and waiting for an ostensibly legal basis for discharge to emerge).

14

complete them. Thus, the allegation about additional work assignments does not support the inference of a causal connection between Plaintiff's protected activity and his lay-off. In short, Plaintiff has not adduced evidence "sufficient to raise the inference that his protected activity was the likely reason for the adverse action."[33]

Finally, even if Plaintiff could make out a *prima facie* case of retaliation, Defendant has met its burden to produce a legitimate, non-retaliatory reason for laying Plaintiff off. Defendant asserts that Plaintiff was laid off along with other employees when Defendant saw a drop in its business. Plaintiff has not challenged evidence that Forrest laid off a number of employees in late 2006. Forrest addressed the delivery drivers in August 2006 and informed them that their productivity had to improve if they wanted to continue to work for Defendant. Thereafter, in October 2006 Forrest dismissed two delivery drivers for performance issues, and in November 2006 was directed by management to lay off even more employees. Forrest states that he selected Plaintiff for lay off in this second round of reductions based on the overall slowdown in work and Forrest's perception that Plaintiff had difficulty in getting along with other employees and exhibited a poor attitude towards authority. The Court holds that changes in business conditions constitute a legitimate reason for laying off an employee.[34] Therefore, Defendant has met its burden of production.

**C. Pretext**

---

[33] *Spengler*, 615 F.3d at 493.

[34] *See Crawford v. TRW Autmotive, U.S. LLC*, 560 F.3d 607, 614 (6th Cir. 2009) (holding on ERISA retaliation claim that company had "strong non-discriminatory reason" for terminating employees to save in labor costs); *Schweitzer v. Teamster Local 100*, 413 F.3d 533, 539–40 (6th Cir. 2005) (holding that employer's decision to lay off employee was legitimate where employer had lost $1 million in two years).

Accordingly, the burden shifts back to Plaintiff to show that Defendant's explanation is pretext for discrimination. A plaintiff may demonstrate that an employer's given reason is not credible by demonstrating that the proffered reason (1) has no basis in fact, (2) did not actually motivate the employer's action, or (3) was insufficient to motivate the employer's action.[35] An employer's proffered reason cannot be proved to be a pretext "unless it is shown *both* that the reason was false, *and* that discrimination [or retaliation] was the real reason."[36] The Court holds that Plaintiff has made none of these showings here. Plaintiff has not proven that Defendant somehow singled him out for lay off or that Defendant's reasons for laying Plaintiff off had no basis in fact or were insufficient to justify the lay-off. The evidence also shows that Forrest chose not to recall Plaintiff when business improved in March 2007. However, Plaintiff has not shown that Forrest singled Plaintiff out in this respect. For example, Plaintiff has no evidence that any employee whom Forrest laid off in late 2006 was later recalled. Viewing this evidence in the light most favorable to the non-moving party, the Court concludes that Plaintiff has not shown that Defendant's proffered legitimate reasons for laying him off were pretext for discrimination. Therefore, Defendant's Motion for Summary Judgment is **GRANTED** on the retaliation claim.

<u>CONCLUSION</u>

The Court concludes that Defendant is entitled to judgment as a matter of law on Plaintiff's remaining claims. Because Plaintiff has failed to respond to Defendant's arguments about his § 1981 claim for sexual orientation discrimination and reverse discrimination or offer any evidence in

---

[35] *Harris*, 594 F.3d 476, 486 (citation omitted).

[36] *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

support of these claims, the Court holds that Plaintiff has conceded the claims for purposes of summary judgment. The Court also holds that summary judgment is proper on the merits of Plaintiff's § 1981 retaliation claim. Plaintiff has not shown that the decision-maker in this case knew about Plaintiff's protected activity or that there was a causal connection between his protected activity and his subsequent lay-off. Even if Plaintiff had established these elements of his claim, Defendant has come forward with a legitimate reason for laying Plaintiff off, and Plaintiff has not show how Defendant's proffered reason was pretext for discrimination. Therefore, Defendant's Motion for Summary Judgment is **GRANTED**.

      **IT IS SO ORDERED.**

                                        **s/ S. Thomas Anderson**
                                        S. THOMAS ANDERSON
                                        UNITED STATES DISTRICT JUDGE

                                        Date: May 21, 2012.